IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

**EOD**
04/13/2016

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **SHANE O'NEAL** | § | Case No. 15-90210 |
| xxx-xx-4566 | § | |
| | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| BETSY MOWERY | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 15-9003 |
| | § | |
| SHANE O'NEAL | § | |
| | § | |
| Defendant | § | |

## MEMORANDUM OF DECISION PERTAINING TO
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT[1]

ON THIS DATE the Court considered the Motion for Summary Judgment filed by

the Plaintiff, Betsy Mowery ("Plaintiff"), in the above-referenced adversary proceeding,

the response filed in opposition to the Motion by the Defendant, Shane O'Neal

("Defendant" or "Debtor"), and the Plaintiff's reply thereto.  Upon due consideration of

the pleadings, the proper summary judgment evidence submitted by the parties, and the

relevant legal authorities, the Court concludes that the Plaintiff has failed to establish the

existence of each essential element necessary to the formation of the contract at issue by

---

[1]  This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or other evidentiary doctrines applicable to the specific parties in this proceeding.

which the Plaintiff could prevail as a matter of law on the grounds upon which the

summary judgment request is based.  Thus, the Plaintiff's Motion for Summary Judgment

must be denied.[2]

## Factual and Procedural Background[3]

In or around January 2014, the Plaintiff and Defendant became acquainted through

the website, Match.com.[4]  Following these online communications, the two met in person

several times.[5]  Their relationship developed and the couple soon engaged in sexual

intercourse.[6]  Later that year the Plaintiff informed the Defendant she was experiencing

genital health issues, and at that time, the Defendant disclosed to the Plaintiff that he

suffered from genital herpes.[7]  The Plaintiff was formally diagnosed with herpes for the

first time on June 27, 2014.[8]  The Defendant had personally diagnosed his own condition

back in 1975[9] and admits that he did not inform the Plaintiff that he was infected with

---

[2]  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.  This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

[3]  The facts presented are those which stand uncontested by and among the parties and are presented only as a general factual background to the legal claims asserted in the case.  This section is not intended to resolve any disputed or contested facts.

[4]  Defendant's Response, § IV, ¶ B.

[5]  Defendant's Response, § IV, ¶ B.

[6]  Plaintiff's Motion at 2; Defendant's Response, § IV, ¶ B.

[7]  Defendant's Response, § IV, ¶ B.

[8]  Plaintiff's Motion at 2.

[9]  Plaintiff's Ex. E at 3.  The Defendant also admits he has "never been diagnosed by a physician."  *Id.*

herpes prior to the parties engaging in sexual contact.[10]  The couple's relationship

eventually ended.[11]

The Plaintiff subsequently retained Mr. Wade Barrow as legal counsel, and on

December 18, 2014, Mr. Barrow mailed a letter to the Defendant addressing several

items: (1) Mr. Barrow's role as counsel to Ms. Mowery; (2) Defendant's failure to inform

Ms. Mowery that he carried the herpes virus; (3) Defendant's transmission of the virus to

Ms. Mowery; and (4) Mr. Barrow's authorization and offer to settle all of the Plaintiff's

civil claims against the Defendant for the sum of $1,500,000.00.  This settlement offer

"remain[ed] open for 30 days from the date of [the] letter."[12]  The Defendant responded to

Mr. Barrow via email on January 17, 2015, stating, in part, "I care for Ms. Mowery,

therefore offer her a one-time payment of $500,000 to settle all civil claims with regards

to this matter."[13]

On January 20, 2015, Mr. Barrow replied to the Defendant via email.  The

response reads:

Dear Mr. O'Neal:

I have received your correspondence of January 17, 2015, offering
$500,000.00 to Ms. Mowery to settle all civil claims with regards to this matter.
Ms. Mowery accepts your offer of settlement.

---

[10]  Plaintiff's Ex. D at 3.

[11]  Defendant's Response, § IV, ¶ B.

[12]  Plaintiff's Ex. A.  Defendant has admitted the correspondence referenced by the Plaintiff is "a
true and correct copy of written correspondence [he] received [and sent]."  Plaintiff's Ex. D at 3.

[13]  Plaintiff's Ex. B.

**-3-**

Please forward a cashier's check to our office in the amount of $500,000.00 made payable to Betsy Mowery and Law Offices of Steven C. Laird, P.C. by February 20, 2015.

Once the settlement funds cleared we will forward a release of all civil claims with regards to this matter.

Sincerely,

Wade A. Barrow[14]

The Defendant did not subsequently deliver a $500,000.00 cashiers check, nor tender any other amount to the Plaintiff or her counsel.

The Plaintiff subsequently filed suit[15] against the Defendant in the 67th Judicial District Court of Tarrant County, Texas, ("State Court") on March 25, 2015.[16]  The suit alleged that the Defendant had breached the parties' settlement agreement, and in the alternative, the Plaintiff sought damages for the alleged infliction of the intentional tort.[17] Following discovery,[18] the Plaintiff filed a Motion for Summary Judgment in the State Court on or about May 22, 2015.[19]  The hearing on that motion was scheduled for August 6, 2015.[20]

The Defendant filed his voluntary petition for relief under Chapter 7 of the

---

[14]  Plaintiff's Ex. C.

[15]  Cause No. 067-277537-15, styled *B.M.M. v. Shane O'Neal*.  Defendant's Response, § IV, ¶ D.

[16]  Plaintiff's Complaint, Adv. No. 15-9003 [dkt. #1] at ¶ 15.  Case No. 15-90210 [dkt#1] at p. 28.

[17]  Adv. No. 15-9003 [dkt. #1] at ¶ 16.

[18]  Plaintiff's Ex. D and E.  Discovery took place in April and May 2015.  *Id.*

[19]  Adv. No. 15-9003 [dkt. #1] at ¶¶ 17-18.

[20]  Adv. No. 15-9003 [dkt. #1] at ¶ 19.

Bankruptcy Code in this Court on August 5, 2015,[21] thereby staying the summary judgment hearing set for the following day in the State Court.  His original bankruptcy schedules list Ms. Mowery as a creditor with a claim for damages of $1,500,000.00.[22]

In November 2015, the Plaintiff filed her complaint in the above-referenced adversary proceeding,[23] asserting that the debt allegedly owed to her by the Defendant should be declared nondischargeable as a willful and malicious injury pursuant to 11 U.S.C. §523(a)(6).  On February 25, 2016,[24] the Plaintiff filed her Motion for Summary Judgment for a summary determination that the pre-lawsuit communications between the parties had resulted in a legally enforceable contract which settled the Plaintiff's claims for the sum of $500,000.00.  The Defendant in his response disputes whether a binding agreement had ever been reached between the parties.[25]

## Discussion

*Standards for Summary Judgment*

The Plaintiff brings her Motion for Summary Judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056.[26]  That rule

---

[21]  Case No. 15-90210 [dkt #1].

[22]  *Id*. at 23.

[23]  Adv. No. 15-9003 [dkt. #1].

[24]  Adv. No. 15-9003 [dkt. #10].

[25]  Adv. No. 15-9003 [dkt. #11].

[26]  Pursuant to the scheduling order issued in this adversary proceeding, motions for summary judgment are required to comply in format and content with Local District Court Rule CV-56 and such

incorporates Federal Rule of Civil Procedure 56, which provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[27]  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.[28]  The moving party asserting that a fact cannot be genuinely disputed must support that assertion by:

> (A) citing to particular parts of the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c).

The manner in which the necessary summary judgment showing can be made depends upon which party will bear the burden of persuasion at trial.  If, as in this case, the burden of persuasion is on the moving party, "that party must support its motion with

---

motions shall be decided under the procedures stated therein.

[27] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), *quoting* FED. R. CIV. P. 56(c).

[28] *Id.* at 323.

credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial."[29] "When a summary judgment movant bears the burden of persuasion at trial (e.g., the movant is the plaintiff, or the movant is a defendant asserting an affirmative defense), she must establish all the essential elements of her claim (or defense)."[30]

If a summary judgment motion is properly supported, a party opposing the motion may not merely rest upon the contents of its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary.[31] The substantive law will identify which facts are material.[32] In its objection, the nonmovant must show more than a "mere disagreement" between the parties,[33] or that there is merely "some metaphysical doubt as to the material facts."[34] Neither are unsubstantiated, conclusory assertions in the response sufficient to raise a genuine issue of material fact.[35] However, "[t]he issue of material fact

---

[29]  *Id.* at 331.

[30]  *Birk v. Stark*, 2013 WL 1857151, at *2 (S.D. Ill. May 2, 2013) [applied to a plaintiff's affirmative claims]; *Lauterbach v. Illinois State Police*, 2015 WL 4555548, at *3 (C.D. Ill. July 28, 2015) [applied to a defendant's affirmative defense].

[31]  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986), *citing* FED. R. CIV. P. 56(e).

[32]  *Id.*

[33]  *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413 (5th Cir. 1993).

[34]  *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

[35]  *Jacobs v. City of Port Neches,* 7 F.Supp.2d 829, 833 (E.D. Tex. 1998) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

which must be present in order to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence;  rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[36]

The record presented is reviewed in the light most favorable to the nonmoving party.[37]  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"[38]  Further, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[39]

In this case, the Plaintiff bears the ultimate burden of persuasion with regard to the existence of a binding settlement agreement.  Therefore, the Plaintiff is entitled to a summary judgment only if there exists no genuine issue of material fact as to each essential element as to the formation of the contract at issue.  To the extent that an actual controversy does exist over a disputed fact, the finder of fact resolves any doubts and draws all reasonable inferences in favor of the nonmoving party.[40]

---

[36] *Anderson*, 477 U.S. at 248-49.

[37] *Matsushita,* 475 U.S. at 587.

[38] *Id.* at 587, *citing First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968).

[39] *Anderson,* 477 U.S. at 248.

[40] *U.S. ex rel. Longhi v. United States*, 575 F.3d 458, 465 (5th Cir. 2009).

*Existence of Enforceable Contract*

The Plaintiff's Motion:  (1) asserts the existence of an enforceable settlement agreement – or contract – between the parties;[41] (2) contends that the Defendant subsequently breached that settlement agreement; and (3) claims an entitlement to summary judgment against the Defendant for the purported settlement amount of $500,000.00.[42]  The Defendant contends there was no binding settlement agreement between the parties.[43]

The first step in order to prevail on a claim for breach of contract requires a plaintiff to demonstrate the existence of a valid contract.[44]  Under Texas law, a legally enforceable contract has six elements:

(1) an offer;

(2) an acceptance in strict compliance with the terms of the offer;

(3) a meeting of the minds;

(4) a communication that each party consented to the terms of the contract;

(5) execution and delivery of the contract with an intent that it become mutual and binding on both parties; and

---

[41]  Plaintiff's Motion at  2-4.

[42]  Plaintiff's Motion at 4-5.

[43]  Defendant's Response at 7-8.  The Defendant also contends the "purported settlement agreement is unconscionable." *Id.* at 8-14.  Given the resolution of the motion as set forth herein, this additional defense need not be addressed by the Court.

[44]  To recover for breach of contract, a plaintiff must show:  (1)  the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff suffered damages as a result of the breach.  *See, e.g.*, *B & W Supply, Inc. v. Beckman,* 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Aguiar v. Segal,* 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

(6) consideration.[45]

"Under the common law, an acceptance may not change or qualify the material terms of the offer, and an attempt to do so results in a counteroffer rather than acceptance. But the materiality of the altered term is key, and an immaterial variation between the offer and acceptance will not prevent the formation of an enforceable agreement. . . . The materiality of a contract term is determined on a contract-by-contract basis, in light of the circumstances of the contract."[46]

The December 18, 2014 letter from the Plaintiff's counsel to the Defendant clearly constituted an offer in search of an acceptance. The Plaintiff offered that, in exchange for $1,500,000.00, she would "settle all civil claims" against the Defendant for "withh[olding] this [health] information from [Plaintiff] and infect[ing] her with an incurable disease."[47]

The Defendant's response on January 17, 2015, was not an "acceptance in strict compliance with the terms of [the Plaintiff's original] offer."[48] Instead, the Defendant set

---

[45] *G.D. Holdings, Inc. V. H.D.H. Land & Timber, L.P.*, 407 S.W.3d 856, 861 (Tex. App.–Tyler 2013, no pet.) (citing *Advantage Physical Therapy, Inc. V. Cruse*, 165 S.W.3d 21, 24 (Tex. App.–Houston [14th Dist.] 2005, no pet.)).

[46] *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 513-14 (Tex. 2014) [holding that an acceptance referencing only "claims asserted" was not a material alteration of offer encompassing "claims asserted or which could have been asserted"]; *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 74 (Tex. App.—Houston [14th Dist.] 2010) ["A purported acceptance that changes or qualifies an offer's material terms constitutes a rejection and counteroffer rather than an acceptance."].

[47] Plaintiff's Ex. A.

[48] *G.D. Holdings, Inc.*, 407 S.W.3d at 861.

forth a counteroffer: "I care for Ms. Mowery, therefore offer her a one-time payment of $500,000 to settle all civil claims with regards to this matter."[49]  This was a classic counteroffer.  "A counteroffer is an offer made by an offeree to [his] offeror, relating to the same matter as the original offer and proposing a substituted bargain differing from that proposed by the original offer."[50]  The Defendant's response related back to the same issues addressed in the Plaintiff's original offer, but instead provided for a reduced payment to release him from the same alleged civil claims.  The Plaintiff at that point could have accepted those new terms, binding both parties to the terms of the Defendant's counteroffer.  She did not.

Though Mr. Barrow's January 20, 2015 response to the Defendant's counteroffer purported to be an acceptance,[51] it made at least two changes to the Defendant's counteroffer.  It mandated a specific mode of payment — i.e., a cashier's check.[52]  It further imposed a specific deadline for performance by the Defendant — payment by February 20, 2015.[53]

As previously referenced, Texas law provides that "[a] material change in a

---

[49]  Plaintiff's Ex. B.

[50]  *Davis v. Texas Farm Bureau Insurance*, 470 S.W.3d 97, 104 (Tex. App.–Houston [1st Dist.] 2015, no pet. h.) [also noting that a "counteroffer must itself be an offer capable of being accepted."].

[51]  "Under common law, an acceptance must be identical with the offer to make a binding contract. *Gasmark, Ltd. v. Kimball Energy Corp.*, 868 S.W.3d 925, 928 (Tex. App.—Fort Worth 1994, no writ.) (citations omitted).

[52]  Plaintiff's Ex. C.

[53]  *Id.*

**-11-**

proposed contract [or counteroffer] constitutes a counteroffer."[54]  While the materiality of a changed contractual term is determined on a contract-by-contract basis,[55] "a contractual dealing with payment  is **always** . . . a material term."[56]  In adding this material change to the Defendant's counteroffer, the Plaintiff's written response on January 20 became the second counteroffer in the negotiations, not an acceptance of the Defendant's counteroffer.  Because the Plaintiff's January 20 response was a counteroffer rather than an acceptance, no binding contract was formed.[57]  Thus, as a matter of law, the Defendant could not have breached the purported settlement agreement because no contract or settlement agreement had actually been formed.

### Conclusion

Accordingly, upon due consideration of the pleadings, the proper summary judgment evidence submitted, the material facts admitted to exist under Fed. R. Bankr. P. 56 and E.D. Tex. Local R. CV-56(c), the relevant legal authorities, and for the reasons set forth herein, the Court concludes Plaintiff, Betsy Mowery, is not entitled to summary judgment for breach of the purported settlement agreement between the parties because the summary judgment evidence failed to establish each element required to demonstrate

---

[54] *Davis,* 470 S.W.3d at 104.

[55] *See supra* note 46.

[56] *Davis*, 470 S.W.3d at 104 (citing *Parker Drilling,* 316 S.W.3d at 74) (emphasis added); *Gasmark, Ltd.,* 868 S.W.3d at 928.

[57] *G.D. Holdings,* 407 S.W.3d at 861.

that a legally enforceable contract was formed under Texas law.  Accordingly, the Court

concludes that the motion for summary judgment filed by the Plaintiff, Betsy Mowery, in

the above-referenced adversary proceeding, must be denied.  An appropriate order will be

entered which is consistent with this opinion.


Signed on 04/13/2016


THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE


**-13-**